# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES GORMLEY, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) C.A. No.: |
| v. | ) ) ) |
| MAGICJACK VOCALTEC LTD., GERALD VENTO, and JOSE GORDO, | ) ) ) |
| Defendants. | ) ) ) |

## CLASS ACTION COMPLAINT

Plaintiff James Gormley ("Plaintiff"), by his attorneys, except for his own acts, which are alleged on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by magicJack Vocaltec Ltd. ("magicJack" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by magicJack, press releases and other public statements issued by magicJack, and media reports about magicJack. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a securities class action on behalf of all persons who sold magicJack shares between November 12, 2013 and March 12, 2014, (the "Class Period"), seeking remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's claims are asserted against magicJack and certain of magicJack's current and former executive officers and directors.

2. magicJack is a cloud communications company and the inventor of the MagicJack devices and other magicJack products and services. magicJacks plug into a computer's USB port or a power adapter and a high-speed internet source, providing users with complete phone service for home, business, and travel.

3. During the Class Period, magicJack and certain of its former and current executive officers misrepresented the Company's expected financial performance. Specifically, the defendants understated the Company's Adjusted EBITDA projection, thus depressing the Company's stock price.

4. On March 12, 2014, after the market's close, the Company announced its financial results for the fourth quarter and full year 2013. Among other things, magicJack reported adjusted EBITDA higher than the previously stated expected range.

5. As a result of the news, the price of magicJack's stock jumped from a closing price of $17.53 per share on March 12, 2014 to close at $21.04 per share on March 13, 2014, an increase of more than 20%.

## JURISDICTION AND VENUE

6. The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and § 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 27 of the Exchange Act, 15 U.S.C. §78aa.

8. This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and § 27 of the Exchange Act because the false and misleading statements had significant effects in this District.

## PARTIES

10. Plaintiff sold magicJack shares as set forth herein and in his certification filed herewith.

11. magicJack is a corporation organized and existing under the laws of Israel. It maintains its principal corporate offices at 12 Benny Gaon Street, Building 2B, Poleg Industrial Area, Netanya, Insrael 42504.

12. Defendant Gerald Vento ("Vento") has served as Chief Executive Officer of magicJack since December 2012. Vento is a director of the Company's board of directors.

13. Defendant Jose Gordo ("Gordo") has served as Chief Financial Officer of magicJack since May 10, 2013. According to the press release issued by the Company on May 9, 2013 announcing Gordo's appointment as Chief Financial Officer, Gordo joined the Company in early 2013.

14. Vento and Gordo are collectively referred to herein as the "Individual Defendants."

15. magicJack and the Individual Defendants are collectively referred to herein as "Defendants."

## CONTROL PERSON ALLEGATIONS

16. By reason of the Individual Defendants' positions with the Company as executive officers (and in Vento's case, as a director as well) the Individual Defendants possessed the power and authority to control the contents of magicJack's annual and quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material, non-public information available to them but not to the public, the Individual Defendants knew that the positive facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

**SUBSTANTIVE ALLEGATIONS**

**Background**

17. magicJack is a cloud communications company and the inventor of the MagicJack devices and other magicJack products and services. magicJacks plug into a computer's USB port or a power adapter and a high-speed internet source, providing users with complete phone service for home, business, and travel.

**The Material Misrepresentations and Omissions**

18. On November 12, 2013, after the market closed, magicJack issued a press release announcing the Company's financial results for the third quarter of 2013. The Company reaffirmed its previously issued Adjusted EBITDA guidance for the entire year. The press release stated the following: "Adjusted EBITDA for the full year 2013 is expected to come in at the high end of the range of previously issued guidance of $52 to $55 million."

19. Also on November 12, 2013, the Company held a telephone conference call with analysts to discuss its third quarter results. During this call, Gordo made false and misleading statements about the Company's projected fourth quarter revenue.

20. During the question and answer period, Gordo responded to a question from Tim Horan (a stock analyst for Oppenheimer) and stated:

> Yes, yes, I mean I think the revenue what we put out is 140 to 142 right and we're at 105 now. But I think that would tell you that we'd be *35-ish* in the fourth quarter which is kind of where we are.

(emphasis added).

4

21. From November 13, 2013, the day after the Company announced its third quarter earnings, through the end of 2013, magicJack's stock price declined from $12.51 per share to close at $11.91 per share on December 31, 2013.

## The Truth Emerges

22. The truth finally emerged on March 12, 2014, when, after the market closed, magicJack issued a press release announcing its fourth quarter and full year 2013 financial results. Among other things, the Company reported Adjusted EBITDA of $58.2 million, $3.2 million, or 5.8% above the upper limit of the previously projected range. The Company also disclosed that its annual revenue was $143.5 million with fourth quarter revenue of $38.2 million, far higher than the figure of $35 million provided in the November 12, 2013 earnings call.

23. As a result of the news, the trading price of magicJack's stock jumped from a closing price of $17.53 per share on March 12, 2014 to close at $21.04 per share on March 13, 2014, a single day increase of more than 20%.

## LOSS CAUSATION

24. During the Class Period, as detailed herein, Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially deflated the price of magicJack's securities and operated as a fraud or deceit on Class Period sellers of magicJack securities by materially misleading the investing public. Later, when Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of magicJack's shares dramatically increased, as the prior artificial depression was removed from the share price. As a result of their sales of magicJack's shares during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## FRAUD-ON-THE-MARKET DOCTRINE

25. At all relevant times, the market for magicJack's securities was an efficient market for the following reasons, among others:

a) magicJack stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

b) magicJack filed periodic public reports with the SEC and the NASDAQ; and

c) magicJack regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

26. As a result of the foregoing, the market for magicJack's securities promptly digested current information regarding magicJack from all publicly available sources and reflected such information in the prices of the securities. Under these circumstances, all sellers of magicJack shares during the Class Period suffered similar injury through their sale of magicJack shares at artificially deflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

27. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to

any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of magicJack who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who sold or otherwise divested magicJack securities during the Class Period (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

29. The members of the Class are so numerous that joinder of all members is impracticable, since magicJack has millions of shares of stock outstanding and because the Company's shares were actively traded on the NASDAQ. As of August 28, 2015, magicJack had a public float of more than 12.6 million shares issued and outstanding. While the exact number of Class members in unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class and that they are geographically dispersed.

30. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members, including:

(a) whether the Exchange Act was violated by Defendants;

(b) whether Defendants omitted and/or misrepresented material facts in their publicly disseminated reports, press releases, and statements during the Class Period;

(c) whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether Defendants participated and pursued the fraudulent scheme or course of business complained of herein;

(e) whether Defendants acted willfully, with knowledge or recklessly in omitting and/or misrepresenting material facts;

(f) whether the price of magicJack securities was artificially deflated during the Class Period as a result of the material nondisclosures and/or misrepresentations complained of herein; and

(g) whether the members of the Class have sustained damages as a result of the increase in value of magicJack's stock when the truth was revealed, and if so, what is the appropriate measure of damages.

31. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct in a substantially identical manner.

32. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

33. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of Section 10(b) of
### the Exchange Act and SEC Rule 10b-5
### (Against the Company and Gordo)

34. Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

35. This Count is asserted by Plaintiff on behalf of themselves and the Class against all the Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. C 240.10b-5, promulgated thereunder.

36. During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially deflate and depress the market price of magicJack's shares; and (iii) cause Plaintiff and other members of the Class to sell or otherwise divest themselves of magicJack's shares at artificially deflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, the Defendants, and each of them, took the actions set forth herein.

37. Defendants, by the use of means and instrumentalities of interstate commerce: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the sellers of the Company's common stock in an effort to maintain artificially low market prices for magicJack's shares in violation of Section 10(b) of the Exchange Act and Rule 10-5.

38. As a result of their making and/or their substantial participation in the creation of affirmative statements and reports to the investing public, Defendants had a duty to promptly

9

disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC, as embodied in SEC Regulation S-K (17 C.F.R. § 229.10, et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations and performance so that the market prices of the Company's publicly traded securities would be based on truthful, complete, and accurate information. Defendants' material misrepresentations and omissions as set forth herein violated that duty.

39. Defendants engaged in the fraudulent activity described above knowingly and intentionally or in such a reckless manner as to constitute willful deceit and fraud upon Plaintiff and the Class. Defendants knowingly or recklessly caused their reports and statements to contain misstatements and omissions of material fact as alleged herein.

40. As a result of Defendants' fraudulent activity, the market price of magicJack shares was artificially deflated during the Class Period.

41. In ignorance of the true financial condition of magicJack, Plaintiff and other members of the Class, relying on the integrity of the market and/or on the statements and reports of magicJack containing the misleading information, sold or otherwise divested magicJack's common stock at artificially deflated prices during the Class Period.

42. Plaintiff and the Class's losses were proximately caused by Defendants' active and primary participation in magicJack's scheme to defraud the investing public by, among other things, failing to fully and accurately disclose to investors positive material information regarding the Company. Plaintiff and other members of the Class sold magicJack's shares in reliance on the integrity of the market price of those shares, and Defendants manipulated the price of magicJack's shares through their misconduct as described herein. Plaintiff's and the

Class's losses were a direct and foreseeable consequence of Defendants' concealment of the true financial condition of magicJack.

43. Throughout the Class Period, Defendants were aware of material non-public information concerning magic's fraudulent conduct (including the false and misleading statements described herein). Throughout the Class Period, Defendants willfully and knowingly concealed this positive information, and Plaintiff's and the Class's losses were the foreseeable consequence of Defendants' concealment of this information.

44. As a direct and proximate cause of the Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their respective purchases and sales of magicJack shares during the Class Period.

## COUNT II
### Violation of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

45. Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

46. During the Class Period, the Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that the positive facts specified herein had not been disclosed to, and were being concealed from, the investing public. Plaintiff and other members of the Class had no access to such information, which was, and remains solely under the control of the Defendants.

11

47. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware (or recklessly disregarded) that materially false and misleading statements were being issued by the Company and nevertheless approved, ratified, and/or failed to correct those statements, in violation of federal securities laws. Throughout the Class Period, the Individual Defendants were able to, and did, control the contents of the Company's SEC filings, reports, press releases, and other public statements. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed such filings, reports, releases and other statements prior to or shortly after their issuance and had the ability or opportunity to prevent their issuance or to cause them to be corrected.

48. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of magicJack's business, the information contained in its filings with the SEC, and its public statements. Moreover, the Individual Defendants made or directed the making of affirmative statements to securities analysts and the investing public at large, and participated in meetings and discussions concerning such statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew that the positive facts specified herein had not been disclosed to and were being concealed from the public and that the negative representations that were being made were false and misleading. As a result, the Individual Defendants are responsible for the accuracy of magicJack's corporate releases detailed herein and are therefore responsible and liable for the misrepresentations contained therein.

49. The Individual Defendants acted as controlling persons of magicJack within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause magicJack to engage in the

wrongful conduct complained of herein. The Individual Defendants controlled magicJack and all of its employees. As alleged above, magicJack is a primary violator of Section 10(b) of the Exchange Act and SEC Rule 10b-5. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

50. As a direct and proximate result of the wrongful conduct of magicJack and the Individual Defendants, Plaintiff and members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

(A) Declaring this action to be a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certifying Plaintiff as a representative of the Class and her counsel as Class counsel;

(B) Awarding Plaintiff and the members of the Class damages, including interest;

(C) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including and attorneys' fees; and

(D) Awarding such equitable/injunctive or other relief as the Court may deem just and proper

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: March 11, 2016 /s/ Nicholas Porritt

**LEVI & KORSINSKY, LLP**
Nicholas I. Porritt
Adam M. Apton
Michael B. Ershowsky
LEVI & KORSINSKY, LLP
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*Counsel for Plaintiff and Proposed Lead Counsel for the Class*

14